PETER M. ANGULO, ESQ.
ANGULO LAW GROUP
5545 S. Mountain Vista Street, Suite F
Las Vegas, Nevada 89120
(702) 384-8000
(702) 384-8200 – fax
pangulo@angulolawgroup.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KIM BLANDINO, | CASE NO. 2:21-CV-1262-JAD-EJY |
| Plaintiff, | |
| vs. | |
| MICHAEL FEDERICO, ESQ., | **MOTION TO DISMISS** |
| Defendant. | |

COMES NOW Defendant, MICHAEL FEDERICO, ESQ., by and through his counsel of record, PETER M. ANGULO, ESQ., of the ANGULO LAW GROUP, and files the instant Motion to Dismiss as follows:

**POINTS AND AUTHORITIES**

**I.     STANDARDS FOR GRANTING A MOTION TO DISMISS**

This motion is brought pursuant to FRCP 12(b)(1) and 12(b)(6). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. Conley v. Gibson, 355 U.S. 41, 45 (1957); Russell v. Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980). It is essentially a ruling on a question of law. North Star Int'l v. Arizona Corp. Comm., 720 F.2d 578, 580 (9th Cir. 1983). For the movant to succeed, it must

appear to a certainty plaintiff will not be entitled to relief under the facts alleged in the complaint. Halet v. Wend Invest. Co., 672 F.2d 1305, 1309 (9th Cir. 1982).

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) renders plain the minimum pleading requirements of stating a claim of relief that is "plausible on its face." The Court held a complaint should be dismissed if the plaintiff has failed to plead "enough facts to state a claim for relief that is plausible on its face" or does not "raise a right to relief above the speculative level." Id. at 555. "A plaintiff is obligated to provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

In analyzing Plaintiff's Complaint, this Court need not assume the truth of Plaintiff's legal conclusions merely because they are cast in the form of factual allegations. Ritzer v. Gerovicap Pharmaceutical Corp., 162 F.R.D. 642, 645 (D. Nev. 1995)(citing Western Mining Counsel v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), cert. denied, 454 U.S. (1981)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. However, well-pled facts must go beyond the "sheer possibility a defendant has acted unlawfully" or facts that are "merely consistent with" liability. Id.

The allegations in the Complaint demonstrate Plaintiff fails to establish claims under any of the legal theories propounded. Moreover, Defendant has immunities available to him. Accordingly, dismissal is warranted.

II. **FACTUAL BACKGROUND**

Plaintiff begins his Complaint by asserting it is only brought because Judge Federico "refuse[d] to resolve matters between him and plaintiff (Kim Blandino)" without having to involve a court and thus using scarce judicial resources. (ECF No. 1 at ¶ 1).[1] Accordingly Plaintiff asserts, at Paragraph 2, he is entitled to, apparently, a restraining order, injunctive relief and declaratory judgment immediately against Governor Sisolak (and his "tyranny") and the Clark County Detention Center—neither of whom are named in this lawsuit. Paragraph 3 suggests the First, Ninth, Tenth and Fourteenth Amendments are at issue in this case—although only the First Amendment (COUNTS I & IV) is ever directly mentioned in the body of the Complaint. Id., at pp. 14, 23).

Turning to the gravamen of the Complaint, Plaintiff claims he is, alone, a religious entity which is "indivisible" as established by "the Creator." Id., at p. 6. Hence, he has received a "calling" to perform "investigative journalism" in the area of judicial corruption and misconduct as an unpaid (and unofficial) "investigator" for the Nevada Commission on Judicial Discipline (NCJD). Id., at p. 7.

Allegedly, Plaintiff became aware Judge Federico "routinely violated the Nevada Revised Code of Judicial Conduct . . . while doing his Pro Tem duties on the bench" beginning in 2015 Id., at ¶ 9. Nevertheless, it was not until 2019 he decided to contact Judge Federico directly to see if a "resolution" could be obtained for offenses he perceived occurred to him when he appeared before Judge Federico in a traffic hearing—if not, he threatened to file a formal NJDC complaint. Id., at ¶¶ 10-16.

---

[1] That settlement discussions were advanced but were unsuccessful and detailing same in this public filing seems violative of FRE 408.

Apparently, in a phone conversation involving Plaintiff and Judge Federico as Plaintiff was attempting to "resolve" this dispute, "police officers were also listening to the conversation"—which ultimately led to the filing of extortion charges against plaintiff. Id. at ¶¶16, 19.[2] Based on Plaintiff's actions, Judge Federico sought a Temporary Protective Order in Las Vegas Justice Court. Id., at ¶17. When the matter was heard, the judge determined the parties needed to stay away from each other for 30 days and if they could do so then he would dismiss or deny the temporary protective order request. Id., at ¶18.

Based on these facts, Plaintiff alleges Judge Federico has violated his First Amendment right to free exercise and establishment of religion. Id., at p. 14. As can best be understood from reading the assertions under Count I of the Complaint, it appears Plaintiff is claiming it was his religious beliefs of resolving in advance of litigation that led him to engage in the extortionary acts and, therefore, he should not be punished for following his religious beliefs.

Count II of the Complaint is a state law cause of action for abuse of process premised on Judge Federico seeking a temporary protective order to preserve the sanctity of his courtroom and for his personal safety. Plaintiff admits his interaction with Judge Federico resulted in him being ejected from a courtroom in April of 2019. Id. at ¶34. He further admits, even if Judge Federico had told him to stay away, he would not do so if Federico "was on the bench and Kim as an investigator and investigative journalist called to it by the Creator" wanted to be present in the courtroom. Id. at ¶36. Finally, Plaintiff argues, before a TPO can be sought, the applying party "must make good faith efforts to make clear that the possible offending party knows that the applying party does not wish to see or have contact with the possible offending party." Id. at

---

[2] Plaintiff was ultimately convicted on charges of extortion and impersonating a public officer. Exhibit 1.

- 4 -

¶37. Because, allegedly, Judge Federico did not do this, Plaiontiff believes that constitutes an abuse of process.

Count III is also a state law abuse of process claim based on fact the criminal charges for extortion were filed against Plaintiff. Again, he appears to assert his extortionary behavior was motivated by his religious belief of trying to resolve matters without filing a formal complaint. Id. at ¶¶46-47. This Court may take judicial notice that on March 9, 2022, Plaintiff was convicted of charges both of extortion and of impersonating a public officer (an NCJD investigator) in state court. As indicated, he is scheduled for sentencing on July 7, 2022.

Count IV is a First Amendment violation for retaliation based on an exercise of the freedom to petition for redress of grievances. Id. at p. 23. Under this theory, Plaintiff claims this right is implicated in his effort to resolve a dispute privately before filing a public complaint—despite the fact his acts constituted extortion. He further asserts his efforts to investigate and every one of his prefiling activities as an NCJD investigator are protected under the First Amendment. Id. at ¶67.

Finally, in Count V, Plaintiff asserts a state law claim of malicious prosecution premised on Judge Federico seeking the TPO. Id., at p. 24.

Respectfully, based on these factual allegations, Plaintiff has failed to establish any valid causes of action that would allow this litigation to go forward—especially in light of the relevant law in this area. Accordingly, dismissal is appropriate.

### III.  PLAINTIFF'S CAUSES OF ACTION ARE INVALID

#### a.  THERE IS NO PROTECTION FOR EXTORTION

While the First Amendment to the United States Constitution provides protection for speech and religious practices, it is not without limitations. Acts of extortion fall outside the

protections and intent of the First Amendment. United States v. Landham, 251 F.3d 1072, 1080 (6th Cir. 2001)("[I]t is well established that true threats, unlike political hyperbole and other protected speech, are not protected by the First Amendment."); United States v. Hutson, 843 F.2d 1232, 1235 (9th Cir. 1988). Extortion, like robbery or murder, refers to criminal conduct that has a commonly understood meaning providing ample notice of the conduct falling within its ambit, limiting the potential for abuse in enforcement, and ensuring that protected First Amendment speech is not within its reach. See United States v. Jackson, 180 F.3d 55, 69 (2d Cir. 1999), reh'g granted, 196 F.3d 383 (2d Cir.1999), cert. denied, 530 U.S. 1267 (2000).

Nevada's statutory law clearly criminalizes extortionary conduct. NRS 205.320. Under this statute, a person who, "with the intent to extort or gain any money or other property or . . . or to influence the action of any public officer, . . . whether or not the purpose is accomplished, threatens directly or indirectly . . . [t]o accuse any person of a crime; . . . [or] [t]o expose or impute to any person any . . . disgrace" is deemed a felony.

In this case, Plaintiff's First Amendment claims revolve around his extortionary behavior—for which he has been convicted. If a §1983 case seeking damages alleges constitutional violations that would necessarily imply the invalidity of a conviction or sentence, the prisoner must establish that the underlying sentence or conviction has been invalidated on appeal, by habeas petition, or through a similar proceeding. Heck v. Humphrey, 512 U.S. 477, 483-87 (1994). Under Heck, a party who was convicted of a crime is barred from bringing a suit under § 1983 if a judgment in favor of that party would necessarily imply the invalidity of the conviction or sentence. Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007)(citing Heck, 512 U.S. at 114). Thus, in light of Plaintiff's related conviction for extortion and other crimes, his First Amendment claims (Counts I & IV) are invalid and must be dismissed.

### b. THE ACTIONS ARE PROTECTED BY JUDICIAL IMMUNITY

It is somewhat clear from the Complaint the genesis for all of Plaintiff's actions arose from acts taken by Judge Federico when he was on the bench in his capacity as a *judge pro tempore*. Because of those actions, Plaintiff, who apparently took offense to same, contrived to demand an apology and to extort Judge Federico to get his desired outcome. His harassment of the Judge both inside and outside of the courtroom were acts directly related to Judge Federico's judicial activities. Likewise, the filing of a TRO and the institution by the State of criminal charges were clearly designed to protect the sanctity of the judicial position. Accordingly, Judge Federico is protected by judicial immunity—which is fatal to the continuance of Plaintiff's case.

There is no question that the inherent power of the judiciary contemplates it "possesses the inherent power to protect itself and administer its affairs." Sun Realty v. Eighth Judicial District Court, 91 Nev. 774, 776, 542 P.2d 1072, 1073 (1975); see In Re Mone, 143 N.H. 128, 134, 719 A.2d 626, 631 (1998)(court security officers are essential to the obligation of the court to administer justice and adjudicate disputes in an atmosphere of "safety, decorum, and fairness"); Board of County Commissioners of Weld County v. Nineteenth Judicial District Court, 895 P.2d 545, 548 (Colo. 1995)(the proper administration of justice requires that the courts operate in a safe and secure environment).

Judges and those performing judge-like functions are absolutely free from liability for damages for acts performed in their official capacities. Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986)(en banc). Judicial immunity from claims for damages generally can be overcome only in two sets of circumstances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. See Hyland v. Wonder, 117 F.3d 405, 413 n. 1 (9th Cir. 1997). Second, a judge is not immune for actions, though judicial in

nature, taken in the complete absence of all jurisdiction. <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991). As long as the judge has jurisdiction to perform the "general act" in question, he or she is immune however erroneous the act may have been, however injurious the consequences of the act may have been, and irrespective of the judge's claimed motivation. <u>Harvey v. Waldron</u>, 210 F.3d 1008, 1012 (9th Cir. 2000)(<u>citing</u> <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 199-200 (1985)).

In the following cases, courts have found judges acted in their judicial capacity and were entitled to immunity: <u>Mireles v. Waco</u>, 502 U.S. 9 (1991)(judge's alleged actions in directing police officers to bring attorney who was in the courthouse into his court were taken in judge's "judicial capacity" and, thus, judge was immune from §1983 suit, even though judge allegedly directed officers to carry out order with excessive force); <u>Burns v. Reed</u>, 500 U.S. 478, 492 (1991)(issuance of a search warrant is unquestionably a judicial act); <u>Sheppard v. Maxwell</u>, 384 U.S. 333, 358 (1966)(a judge acts in a judicial capacity when exercising control of the judge's courtroom); <u>Ashelman v. Pope</u>, 793 F.2d 1072 (9th Cir.1986)(extending judicial immunity to a judge who allegedly conspired with a prosecutor to predetermine outcome of proceeding). In fact, the Supreme Court explicitly stated "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority," nor "if his exercise of authority is flawed by the commission of grave procedural errors." <u>Stump v. Sparkman</u>, 435 U.S. 349, 356, 359 (1978).  Essentially, then, "[a] judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" <u>Boyd v. Biggers</u>, 31 F.3d 279, 285 (5th Cir. 1994)(quoting <u>Mireless</u>, 502 U.S. at 12).

In this case, Judge Federico's actions in seeking a TPO against Plaintiff was clearly designed to stop Plaintiff from harassing and attempting to influence the judge in his official

judicial capacity. It dealt with a party who had been before him. Thus, his actions in the courtroom and those outside the courtroom—taken to protect the integrity of the Court—are all subsumed by judicial immunity and warrant dismissal.

### c. WITNESS IMMUNITY APPLIES

Again, the actions for which Judge Federico is being excoriated deal with his involvement as a witness to improper conduct on Plaintiff's part. As such, he should be protected by Nevada state law and federal common law witness immunity. Witnesses are entitled to immunity from liability and damages in 42 U.S.C. § 1983 actions for their involvement in criminal matters and preliminary proceedings. See Briscoe v. LaHue, 460 U.S. 325 (1983); Daloia v. Rose, 849 F.2d 74 (2d Cir.), cert. denied, 488 U.S. 898 (1988). The best statement of this rule is found in Butz v. Economou, 438 U.S. 478, 512 (1978):

> The cluster of immunities protecting the various participants in judge-supervised trials stems from the character of the judicial process rather than its location . . . Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.

See Guercio v. Brody, 814 F.2d 115, 119 n. 3 (6th Cir. 1987). In the present case, that immunity should also apply.

### d. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

#### i. There Is No Need to Exercise Pendant Jurisdiction

Ordinarily, district courts should relinquish jurisdiction over pendant state law claims when all federal claims are dismissed before trial. United Mine Workers of America v Gibbs, 383 U.S. 715, 726 (1966); 28 U.S.C. § 1367(c)(3)('The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Indeed, "it is generally preferable for a

district court to remand remaining pendent claims to state court." Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th Cir. 1991). In this case, the federal claims are without substance and this Court should dismiss the remaining state law claims.

### ii. There Is No Abuse of Process

Abuse of process is similar, but not identical, to malicious prosecution. While abuse of process hinges on the misuse of regularly issued process, malicious prosecution rests on the wrongful issuance of process. Nevada Credit Rating Bureau, Inc. v. Williams, 88 Nev. 601, 606, 503 P.2d 9, 12 (1972). In essence, abuse of process is "the use of the process as a club by which to extort something unrelated to the process from the other party." Clausen v. Carstens, 83 Or. App. 112, 730 P.2d 604, 608 (1986). It consists of two elements: (1) An ulterior purpose other than resolving a legal dispute, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. Kovacs v. Acosta, 106 Nev. 57, 787 P.2d 368 (1990).

The requirement for an ulterior purpose is very straight forward. "Ulterior purpose" is any "improper motive" underlying the issuance of legal process. Laxalt v. McClatchy, 622 F. Supp. 737, 751 (D. Nev. 1985). In others words, it simply means the party abusing the process must have had some improper motivation for filing the action other than what is normally considered by those acts. Wilcon, Inc. v. Travelers Indem. Co., 654 F.2d 976, 984, (5th Cir. Unit A 1981). Arguably, the ulterior purpose must be the primary reason motivating the process abused. Clausen, 730 P.2d at 609; Restatement (Second) of Torts § 682 and *comment b*.

The second element deals with the immediate purpose to the use of process. Wilcon, 654 F.2d at 984. In other words, it must be used to gain some collateral advantage not properly considered a part of the current proceeding. Id., 654 F.2d at 984-85. Merely filing or maintaining a lawsuit--even for an improper motive--often fails to properly state a basis for

abuse of process; there must be an overt act. Kollodge v. State, 757 P.2d 124, 126 (Alaska 1988); accord Ging vs. Showtime Entertainment, Inc., 570 F. Supp. 1080, 1083 (D. Nev. 1983). For example, in Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1987), abrogated on other grounds, Ace Truck & Equipment Rentals, Inc. v. Kahn, 103 Nev. 503, 746 P.2d 132 (1987), Bull instigated a malpractice suit against McCuskey for the purpose of coercing a nuisance settlement. Although there may have been a basis for the malpractice suit, it was not to receive damages for malpractice but rather to force the respondent's hand in another area. The court held such actions constitute an abuse of process.

Importantly, acts supporting abuse of process are those occurring ***after*** process is properly obtained. See Laxalt, 622 F. Supp. at 752. Improper acts cannot be inferred from improper motive. Bosler v. Shuck, 714 P.2d 1231, 1235 (Wyo. 1986).

> [L]iability should result only when the sense of awareness progresses to a sense of purpose, and, in addition to the utilization and the procedure for the purposes for which it was designed become so lacking in justification as to leave its legitimate function as a reasonable justifiable litigation procedure.

Nienstedt v. Wetzel, 133 Ariz. 348, 651 P.2d 876, 882 (Ct. App. 1982). In other words, carrying out the process to its authorized conclusion--even with bad intentions or actual malice--does not rise to the level of abuse of process. See Zamora v. Creamland Dairies, 747 P.2d 923 (N.M. 1987); Hartley v. State Water Resources Dept., 713 P.2d 1060 (Or. Ct. App. 1986); Brault v. Smith, 679 P.2d 236 (Mont. 1984); Batten v. Abrams, 626 P.2d 984 (Wash. Ct. App. 1981)(baseless lawsuit not an abuse of process).

Likewise, as the title of the tort implies, there must be the issuance of process. "Process" is the means whereby the court compels compliance with its demands. McCollum v. Superior Court, 588 P.2d 861 (Ariz. Ct. App. 1978).

> In ascertaining whether a cause of action for abuse of the legal processes has been alleged, a distinction should be noted between the use of legal "proceedings" and the abuse of legal "process," the former referring to the use of a judicial or quasi-judicial remedy and the latter referring to the use of a writ, order, or command of the Court in the course of a judicial proceeding. It is only where a legal writ or process is willfully perverted so as to accomplish a result not commanded by it or lawfully obtainable under it that an action will lie for abuse of process. The issuance of process, although maliciously accomplished, gives rise only to an action for malicious prosecution, not to an action for abuse of the legal process.

Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc., 358 F. Supp. 17, 21 (E.D. Tenn. 1972), aff'd, 477 F.2d 598 (6th Cir. 1973)(citations omitted). In this case, therefore, there must be shown the issuance--by Defendant--of some lawful legal process which was then abused. Without it, the claim for relief withers and dies.

From the Complaint it is clear there were no actions by Judge Federico subsequent to the application for a TPO that suggested his motivation was anything other than the desire to obtain a buffer between himself and Plaintiff. Furthermore, no process was ever issued. In fact, the Complaint goes to great lengths to rejoice in the fact the requested TPO was not granted. Accordingly, this claim is unfounded and must be discarded as dross.

### iii. There Is No Malicious Prosecution

In Nevada, the prima facie elements of the tort of malicious prosecution are (1) want of probable cause, (2) malice, (3) favorable termination of litigation, and (4) resulting damages. Chapman v. City of Reno, 85 Nev. 365, 369, 455 P.2d 618 (1969). Want of probable cause is judged by an objective test. Dutt v. Kremp, 111 Nev. 567, 573, 894 P.2d 354, 358 (1995). Under this test, it is for the court to decide whether a reasonable attorney would have considered the prior action legally tenable--ignoring any subjective factors such as the attorney's expertise and belief. 111 Nev. at 573-74, 894 P.2d at 358.

In this case, the Court may take judicial notice of Plaintiff's conviction. That fact destroys the element of want of probable cause for the action and destroys this claim for relief also. Accordingly, dismissal is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant asks this Court to dismiss this litigation with prejudice.

RESPECTFULLY SUBMITTED this ___/___ day of June, 2022.

ANGULO LAW GROUP, LLC

By_____
PETER M. ANGULO, ESQ.
5545 S. Mountain Vista Street, Suite F
Las Vegas, Nevada 89120
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the __1__ day of June, 2022, I served the above MOTION TO DISMISS through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

Kim Blandino, #363075
CCDC In Custody House Arrest Module
330 S. Casino Center Blvd.
Las Vegas, Nevada  89101
Plaintiff in Proper Person

*/s/ Margaret A. Mehr*
An Employee of the Angulo Law Group

# Exhibit 1

DISTRICT COURT

CLARK COUNTY, NEVADA

FILED IN OPEN COURT
STEVEN D. GRIERSON
CLERK OF THE COURT

@ 1:27 pm

MAR 09 2022

BY HALY PANNULLO, DEPUTY

THE STATE OF NEVADA,

    Plaintiff,

-vs-

KIM DENNIS BLANDINO,

    Defendant.

CASE NO: C-19-341767-1

DEPT NO: XII

C-19-341767-1
VER
Verdict
4985321

# VERDICT

We, the jury in the above-entitled case, find the Defendant KIM DENNIS BLANDINO, as follows:

**COUNT 1** – EXTORTION

*(Please check the appropriate boxes)*

☒ Guilty of EXTORTION

☐ Not Guilty

**COUNT 2** – IMPERSONATION OF AN OFFICER

*(Please check the appropriate box, select only one)*

☒ Guilty of IMPERSONATION OF AN OFFICER

☐ Not Guilty

DATED this 9th day of March, 2022

_____
FOREPERSON