# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Kim Blandino, | Case No.: 2:21-cv-1262-JAD-EJY |
| Plaintiff | |
| v. | **Order Denying Motion to Quash, Granting in Part Motion to Dismiss, and Denying as Moot Motion for More Definite Statement** |
| Michael Federico, | [ECF Nos. 13, 14, 15] |
| Defendant | |

Pro se plaintiff Kim Blandino sues judge pro tempore Michael Federico, alleging that Federico abused the judicial process when he sought a temporary protective order and levied criminal extortion charges against Blandino. He also claims that Federico's actions violated the First Amendment's protections of free exercise and establishment of religion and that Federico retaliated against him for exercising his First Amendment right to petition the government for redress of grievances. Federico moves to quash service, arguing that Blandino did not properly serve him. He also moves to dismiss this case for failure to state a claim and alternatively asks for a more definite statement.

I deny Federico's motion to quash because Blandino has shown that his latest service attempt was proper. I grant in part Federico's motion to dismiss because Blandino's claims concerning his extortion conviction are barred, his First Amendment claims do not identify any state action that caused the violations he alleges, and his state-law claims are insufficiently pled. I give Blandino limited leave to amend his First Amendment and malicious-prosecution claims and thus deny as moot Federico's motion for a more definite statement.

**Background**

**I.     Blandino's complaint**

Blandino's complaint is difficult to understand.  But construed liberally, Blandino alleges that he appeared before Federico when Federico was serving as a "pro tem judge" for the Las Vegas Justice Court and the Las Vegas Municipal Court.[1]  Apparently believing that Federico was violating judicial rules of ethics, Blandino was preparing to submit a complaint to the Nevada Commission on Judicial Discipline (NCJD) against him.[2]  But, because Blandino's "religious practice require[d] [him] to attempt to resolve disputes without filing a formal complaint if possible," he attempted to speak with Federico directly "through 2019."[3]  Blandino alleges that Federico tried to "entrap [him] into criminal acts of extortion" by contacting Blandino and asking him to draft a settlement proposal for their dispute.[4]  Blandino drafted a settlement document and emailed it to Federico.[5]  But, according to Blandino, "during the same time Federico was contacting [Blandino] to purportedly settle," he was also "filing for a temporary protective order (TPO) under color of state law in the Las Vegas Justice Court stating that [Blandino] was improperly harassing or stalking Federico."[6]  At around the same time, the State of Nevada indicted Blandino on charges of extortion and impersonating a public officer, arising from his interactions with Federico.[7]

---

[1] ECF No. 7 at ¶ 7.

[2] *Id.* at ¶¶ 9–10.

[3] *Id.* at ¶¶ 11–12.

[4] *Id.* at ¶¶ 13–14.

[5] *Id.* at ¶ 15.

[6] *Id.* at ¶ 16.

[7] *See State of Nevada v. Blandino*, C-19-341767-1 (Eighth Jud. Dist. Ct. 2019).

2

A justice court judge held a hearing on Federico's TPO motion and determined that, if he and Blandino could stay away from each other for 30 days, he would dismiss or deny the motion.[8]  Blandino alleges that when they came back to court for the 30-day status check, Federico "lie[d] and commit[ed] perjury in the courtroom" by stating that Blandino "talked to him in the hallway coming into court" because Federico knew that Blandino had another stay-away order in his extortion case.[9]  As a result, Blandino alleges, he "was put back in jail that day."[10]

Blandino alleges that Federico violated his First Amendment rights to "free exercise and establishment" when he sought a TPO against him.[11]  He appears to contend that Federico applied for a TPO because he is "in extreme hostile opposition to [Blandino's] religious beliefs and practices" and wanted to prevent him from "investigat[ing] judicial corruption and misconduct": an activity he claims is part of his religious practice.[12]  He also claims that Federico's actions violated his First Amendment right to petition the government for redress of grievances because Federico was retaliating against Blandino for "seeking to resolve any dispute prior to filing with the NCJD."[13]  Blandino also brings state-law claims for abuse of process and malicious prosecution, claiming that Federico sought a TPO and cooperated with the criminal

---

[8] *Id.* at ¶ 18.

[9] *Id.* at ¶ 19.

[10] *Id.*  Blandino doesn't clarify when and why he was in jail before this incident.

[11] *Id.* at 14.

[12] ECF No. 7 at ¶ 6–7.

[13] *Id.* at ¶ 62.

extortion case against Blandino "to stop [Blandino] from going into open courts . . . so that [he] could not witness and report Federico's corruption."[14]

## II.   Service

Blandino filed this lawsuit in July 2021.[15]  In October, he requested an extension of time to serve Federico, claiming that he could not serve Federico "without risking contempt and jail" because he was subject to a no-contact order as part of the criminal case against him.[16]  The magistrate judge found that Blandino did not establish good cause for an extension, explaining that Blandino was prohibited from personally serving Federico and that he should seek the assistance of a third party.[17]  But the magistrate judge found Blandino's lack of knowledge about the rules regarding service to warrant a one-time, 30-day extension to complete service.[18]

In March 2022, Blandino filed a second extension request, arguing that his son had attempted to serve Federico "in open court" but that Federico refused to accept the papers.[19]  He then hired a process server who tried to serve Federico at his law firm's office four times, each to no avail because Federico wasn't there and the firm's receptionist was not authorized to accept service on his behalf.[20]  The magistrate judge determined that the "facts do not support the conclusion that . . . Federico evaded service" and thus that Blandino again did not show good

---

[14] *Id.* at ¶ 34.

[15] ECF No. 1.

[16] ECF No. 6.

[17] ECF No. 8.

[18] *Id.*

[19] ECF No. 10.

[20] *Id.*

cause to warrant an extension.[21]  But, given Blandino's good-faith attempts to serve Federico

through a process server, the judge gave him an additional 60 days to complete service.[22]

On May 12, 2022—within the renewed service deadline—the process server completed

service on Federico.[23]  On the proof-of-service form, the server explained under penalty of

perjury that he "received Mr. Federico's photo and information that [Federico] was to report" to

the Lloyd D. George Courthouse for a settlement conference on the morning of May 12th.[24]  The

server arrived at the court, went through security, and waited nearby.  When Federico entered the

building, the server "approached him and called him Mr. Federico and told him I had documents

for him."[25]  Federico said "No."[26]  The server "attempted to hand him the documents but he did

not take them, and they landed by his feet."[27]  As Federico continued to walk to the elevator, the

server "told him he was served."[28]

## Discussion

### I.   Federico's motion to quash service (ECF No. 14)

"A federal court is without personal jurisdiction over a defendant unless the defendant

has been served in accordance with" Federal Rule of Civil Procedure (FRCP) 4.[29]  "So long as a

party receives sufficient notice of the complaint, Rule 4 is to be liberally construed to uphold

---

[21] ECF No. 11.

[22] *Id.*

[23] ECF No. 12.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

service."[30]  "Where a defendant attempts to avoid service . . . by refusing to take the papers, it is

sufficient if the server is in close proximity to the defendant, clearly communicates intent to

serve court documents, and makes reasonable efforts to leave the papers with the defendant."[31]

"Once service is challenged, [the] plaintiff[] bear[s] the burden of establishing that service was

valid under Rule 4."[32]  "A signed return of service constitutes prima facie evidence of valid

service[,] 'which can be overcome only by strong and convincing evidence.'"[33]

Federico contends that Blandino's latest attempt to serve him failed to constitute proper

service under FRCP 4.  He submits a declaration claiming that he heard his name being called

out as he was reaching the elevator in the courthouse lobby.[34]  He "turned and saw a gentleman

standing approximately 25 to 30 feet away . . . ."[35]  Federico claims that the process server

"simply called out [his] name[, ] said 'you've been served[, ] and walked away from some papers

on the floor."[36]  He states that he didn't know what he was being served with and he didn't have

time to "walk over and look at the papers."[37]  He went to the settlement conference and "upon

[his] return downstairs to exit the building, the papers were not present."[38]  Federico claims that

the process server's failure to identify which documents he was serving and dropping them 25 to

---

[30] *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citations omitted).

[31] *Id.*

[32] *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

[33] *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (quoting *O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)).

[34] ECF No. 14 at 9.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

30 feet away did not constitute proper service.  Blandino relies on his process server's affidavit to show that service was completed.[39]

I find that Federico's declaration does not constitute strong and convincing evidence to overcome the process server's explanation of his attempts to serve Federico.  And I find that the process server's service attempt constitutes sufficient service under Rule 4.  The server did all that was required to ensure that he was serving the right person and inform him of the documents' contents.  When the server attempted to hand Federico the documents, he refused to accept them, and they dropped to the floor near Federico.  Similar attempts to serve have been found sufficient by courts throughout the country and I find their reasoning persuasive here.[40]  I thus find that Federico was properly served.

Federico separately argues that he is entitled to immunity from service because he was served in a courthouse while he was on the way to a settlement conference.  He relies on the Supreme Court's decision in *Lamb v. Schmitt*[41] for the proposition that individuals cannot be

_____

[39] Blandino also asks that I watch security footage of the incident, presumably available to me through the U.S. Marshals Service, to confirm his process server's account.  *See* ECF No. 24 at 3.  Blandino separately filed a motion to compel the court to provide those security videos, ECF No. 22, which the magistrate judge denied because the court is not a party, and the proper method to obtain such evidence is through a subpoena.  ECF No. 32.  Blandino has not subpoenaed those videos or filed any additional evidence to support his motion.  So I decline to consider his request.

[40] *See, e.g.*, *Mobern Elec. Corp. v. Walsh*, 197 F.R.D. 196 (D.D.C. 2000) (holding service sufficient when process server found the defendant at a marina, identified him by name, said "I have court documents for you," and attempted to hand them over but they fell at the defendant's feet); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1274 (N.D. Cal. 2004) (holding service sufficient when process server confronted defendant at the screening area of an airport, informed him that he had legal documents, attempted to hand them to the defendant's entourage, and stated that "you have been formally served"); *see also* 4A Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 1095 (4th ed. 2015) (noting that "a face[-]to[-]face encounter and an in[-]hand delivery of the papers is not always essential).

[41] *Lamb v. Schmitt*, 285 U.S. 222 (1932).

7

served when they are present at a courthouse to participate in unrelated litigation.  But *Lamb*—

and the cases applying its process-immunity standard—are readily distinguishable.  Those cases

discuss process immunity in the context of "tag" jurisdiction: it is applied when individuals are

served in a nonresident jurisdiction, where they are present only because they are participating in

court proceedings in that jurisdiction.[42]  The Supreme Court held that it would interfere with the

judicial process to serve process in these circumstances because doing so "might tend to

discourage[] the voluntary attendance of those whose presence is necessary or convenient to the

judicial administration in the pending litigation."[43]  The Court also held that "the privilege

should not be enlarged beyond the reason upon which it is founded" and "should be extended or

withheld only as judicial necessities require."[44]  Courts interpreting *Lamb* have noted that,

because the immunity "is founded, not upon the convenience of the individuals, but of the court

itself,"[45] "courts enjoy the discretion to confer (or deny) immunity in such instances."[46]

Process immunity does not shield Federico from service under the circumstances

presented here.  Federico is a Nevada resident who was at the courthouse as a routine part of his

job as an attorney in this state.  Under normal circumstances, personal service can occur

---

[42] *See id.* at 224–25 (analyzing service of an Illinois resident while he was in Mississippi to
attend court as an attorney); *N. Light Tech., Inc. v. N. Lights Club*, 236 F.3d 57, 62 (1st Cir.
2001) (interpreting *Lamb* as recognizing "that some parties *temporarily in the forum state* enjoy
immunity from service" because they are in the state for ongoing litigation (emphasis added and
omitted)); *see also* 4A Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Procedure*
§ 1076 (noting that process immunity "has been applied in the federal courts so that parties,
witnesses, and attorneys entering the state from another jurisdiction in order to attend court . . . in
connection with . . . one lawsuit are immune from service of process in another").

[43] *Lamb*, 285 U.S. at 225.

[44] *Id.*

[45] *Id.*

[46] *N. Light Tech., Inc.*, 236 F.3d at 62.

wherever a defendant is found—including in his workplace.  Nevada's federal courthouse is a

natural place to find a Nevada-licensed attorney, particularly after the process server attempted to

serve Federico at his law firm's offices four separate times to no avail.  And I find that judicial

proceedings were not inconvenienced by the process server's attempts to serve Federico in the

lobby before his settlement conference.  This is not an instance in which the server interrupted

court proceedings to serve documents, and I have no reason to believe that Federico will be

discouraged from coming to this courthouse as a normal part of his business because he could be

served in the lobby.  So I decline to apply process immunity to Federico in these circumstances

and I thus deny Federico's motion to quash service.

## II.    Federico's motion to dismiss (ECF No. 13)

### A.    Blandino's claims concerning the criminal charges brought against him are *Heck*-barred.

Under the Supreme Court's holding in *Heck v. Humphrey*, "a § 1983 cause of action for

damages attributable to an unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."[47]  This bar applies to any "claim based on actions

which would 'render a conviction or sentence invalid' where that conviction has not been

reversed, expunged, or called into question . . . ."[48]

Much of Blandino's complaint alleges facts contradicting his guilty verdict and

conviction for extortion and impersonating a public officer.  He repeatedly states that he did not

extort Federico, that the evidence against him was contrived, and that he was merely trying to

resolve his issues with Federico in an informal manner before resorting to litigation.  But

---

[47] *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994).

[48] *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (cleaned up).

1   Blandino concedes that a jury found him guilty of extortion.[49]  So *Heck* bars any claims

2   challenging this finding because they would imply the invalidity of the conviction.

3          Blandino responds with the pedantic argument that a jury's guilty verdict and a

4   conviction are not the same thing, so *Heck* does not bar this suit.  He points out that "[t]here are

5   half a dozen things that can stop a conviction ever being entered in [his] case": his motion for a

6   new trial or his habeas petition could be granted, "the state court could sua sponte set aside the

7   verdict," or it could "stay sentencing indefinitely."[50]  But I take judicial notice of the fact that, as

8   of the date of this order, none of those things has happened.  The Eighth Judicial District Court's

9   records confirm that Blandino was sentenced on July 7, 2022, and there is no indication that the

10  sentence was overturned or rendered invalid.[51]  Until Blandino's conviction is truly overturned,

11  *Heck* bars his claims challenging the factual underpinning of his extortion conviction.  So

12  Blandino's abuse-of-process claim concerning his conviction (count III) and any other claims

13  that rely on allegations about his extortion charges are dismissed.

14

15          **B.    Blandino's claims concerning Federico's attempts to secure a TPO do not
               clearly invoke judicial immunity.**[52]

16          Blandino alleges that Federico's attempts to secure a temporary protective order against

17  him violated his First Amendment rights to establish and freely exercise his religious beliefs.

18

---

19  [49] ECF No. 25 at 6 (acknowledging that the jury's verdict was filed on the criminal docket).

20  [50] *Id.*

    [51] *State of Nevada v. Blandino*, C-19-341767-1 (Eighth Jud. Dist. Ct. 2019).

21
    [52] Federico also contends that he is entitled to "common law witness immunity" because "the
22  actions for which [he] is being excoriated deal with his involvement as a witness to [Blandino's]
    improper conduct."  ECF No. 13 at 9.  Federico fails to elaborate on which of Blandino's claims
23  this immunity should apply to or what facts in the complaint complain of Federico's actions as a
    witness.  I don't address this argument because it is underdeveloped and the prospect of witness
    immunity does not clearly arise from the facts alleged in Blandino's complaint.

Federico contends that "the genesis for all of [Blandino's] actions arose from actions taken by Judge Federico when he was on the bench in his capacity as a judge pro tempore" and that Blandino's "harassment of [Federico] both inside and outside [of] the courtroom were acts directly related to Judge Federico's judicial activities."[53]  Federico claims that because "the filing of a TPO and the institution by the State of criminal charges were clearly designed to protect the sanctity of the judicial position," Federico was acting within his judicial capacity when he sought the TPO and is thus immune from suit.[54]  Blandino does not respond to this argument.

"Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities."[55]  "The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."[56]  "A judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity."[57]

But Blandino's complaint does not specifically allege that Federico was acting in his capacity as a judge when he sought a TPO against Blandino—since any individual can seek that relief from the court, it is not necessarily tied to Federico's judicial duties.  The authority Federico cites in support of his request for immunity elucidate this distinction.  For example, in *Mireles v. Waco*, the Supreme Court extended judicial immunity to a judge who directed the

---

[53] ECF No. 13 at 7.

[54] *Id.*

[55] *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).

[56] *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

[57] *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

arrest of an attorney.[58]  And in *Ashelman v. Pope*, the Ninth Circuit extended the immunity to a judge who conspired with a prosecutor "to predetermine the outcome of a judicial proceeding."[59] In all of these cases, the action that immunity was extended over was obviously judicial in nature and taken while the judge was on the bench.  While issuing a TPO for another party may be a function normally performed by a judge, seeking one as a party is not.  And while Blandino alleges that Federico was acting under the color of state law when Federico sought the TPO, he does not provide any facts to support that conclusory contention.  So I cannot conclude at this stage that Federico's actions were taken in his official capacity as a judge and he has thus not shown that he is entitled to judicial immunity.[60]

### C.    Federico's extortion arguments are unavailing at this stage.

Federico contends that Blandino fails to state any First Amendment claim because "there is no [First Amendment] protection for extortion."[61]  Federico is correct that the First Amendment's protections do not extend to "true threats" like extortion.[62]  But the complaint's allegations do not make clear that the conduct Federico complained of when seeking a TPO was the same conduct a jury later found extortionary.  The TPO was requested in a separate

---

[58] *Id.* at 12 (noting that "a judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge").

[59] *Ashelman*, 793 F.2d at 1078.

[60] I am not finally deciding the question of whether judicial immunity applies.  That question just cannot be resolved at this motion-to-dismiss stage.  Federico claims that he sought the protective order to "protect the integrity of the court" but that is a factual determination I cannot make on this record.

[61] ECF No. 13 at 5.

[62] *Virginia v. Black*, 538 U.S. 343, 359 (2003); *see also United States v. Hutson*, 843 F.2d 1232, 1235 (9th Cir. 1988) (finding that a statute criminalizing extortionate threats was constitutional under the First Amendment).

proceeding and was ultimately denied.[63]  Construing the complaint's allegations liberally, it's

conceivable that the First Amendment could protect some of the conduct underlying Federico's

TPO request.  Assuming, as I must at this stage, that Blandino's characterizations of his pre-TPO

actions are true, he did not attempt to extort Federico but was instead trying to discuss with him

the ethical violations that Blandino believed Federico was committing and sought to settle those

concerns.[64]  While it is clear that Federico's TPO request and Blandino's ultimate extortion

conviction are related, the complaint does not clearly allege that Blandino was convicted for the

same acts at issue in Federico's TPO request.  At this early stage then, I cannot conclude that

Blandino's First Amendment claims related to the TPO are barred because they concern

extortionary actions unprotected by the First Amendment.

### D.      Blandino's First Amendment claims fail to identify any state action that violated his rights.

Blandino's first count alleges that Federico violated the First Amendment protection for

"[f]ree exercise and establishment" because "Federico knew that[,] if he could get a TPO under

color of state law[,] it would diminish [Blandino's] establishment of religion and [his] free exercise

in the minds of the public."[65]  Blandino alleges that Federico did this "because of Federico's hatred

of [Blandino's] religious establishment and practice."[66]  And Blandino's fourth count alleges that

his attempt to settle his ethics complaints is protected under the First Amendment's redress-of-

grievances clause.[67]  Blandino claims that Federico's actions chilled his right to resolve disputes.

---

[63] *See* ECF No. 7 at 32.

[64] *Id.* at ¶¶ 11–17.

[65] ECF No. 7 at ¶ 29.

[66] *Id.*

[67] *Id.* at 23–24.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or the right of the people to peaceably assemble, and to petition the Government for a redress of grievances."[68]  The First Amendment has been applied to the states through the Fourteenth Amendment.[69]  But for the First Amendment to apply, a state actor must have taken some action to restrict a person's protected rights.[70]  While Federico acted as a judge in Nevada courts, and Federico argues that part of his motivation to seek a TPO against Blandino was to protect the integrity of the court, Blandino does not adequately allege any action that Federico took as a state actor to harm Blandino's religious exercise.  Rather, Federico filed a motion for a temporary protective order, just like any private citizen could, to create a legal barrier between himself and Blandino. Blandino fails to establish that seeking a TPO amounts to a state action.  So I dismiss Blandino's First Amendment claims.

### E.     Blandino cannot state a claim for abuse of process.

In Nevada, the elements of an abuse-of-process claim are: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding."[71]  The crux of an abuse-of-process claim "is

---

[68] U.S. Const. Amend I.

[69] *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)); *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (recognizing that state prisoners have the First Amendment right to file prison grievances).

[70] *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (noting that "it is, of course, a commonplace that the First Amendment is a guarantee only against abridgment by government, federal or state" (cleaned up)).

[71] *LaMantia v. Redisi*, 38 P.3d 877, 889 (Nev. 2002) (citation omitted).

the improper use of process *after* [some legal process] is issued."[72]   Blandino's abuse-of-process claim alleges that Federico tried to obtain a TPO with the ulterior motive of preventing Blandino "from witness[ing] and report[ing] Federico's corruption."[73]   But Blandino's allegation that the TPO request was denied is fatal to his abuse-of-process claim, because no legal process issued as a result of Federico's attempts.   So I dismiss count II of Blandino's complaint without leave to amend.

### F.    Blandino's fails to state a malicious-prosecution claim.

In Nevada, the elements of a malicious-prosecution claim are: "(1) want of probable cause to initiate prior the criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings [in favor of the accused]; and (4) damage".[74]   A plaintiff who was ultimately convicted of the charges brought against him cannot sustain a malicious-prosecution claim.[75]   I take judicial notice of the fact that Blandino was convicted of extortion.[76]   He thus cannot maintain a malicious-prosecution claim as to his conviction.

But Federico fails to explain why the TRO proceedings, which seem to have terminated in Blandino's favor, cannot give rise to a malicious-prosecution claim.   Regardless, I find that Blandino's complaint does not plead sufficient facts to state such a claim.   He asserts that "Federico has demonstrated malice in numerous and obvious ways toward [Blandino]" and that

---

[72] Restatement (Second) of Torts § 682, reporter's note (1977) (emphasis added).

[73] ECF No. 7 at ¶ 34.

[74] *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (citation omitted); *see also Dutt v. Kremp*, 894 P.2d 354, 357 (Nev. 1995), *overruled on other grounds by LaMantia*, 38 P.3d 877.

[75] *Cottino v. Harrison*, 615 P.2d 246, 247 (Nev. 1980); *see also* Restatement (2nd) of Torts § 653 (1977) ("A private person who initiates or procures the institution of criminal proceedings against another *who is not guilty of the offense charged* is subject to liability for malicious prosecution . . . ." (emphasis added)).

[76] *State of Nevada v. Blandino*, C-19-341767-1 (Eighth Jud. Dist. Ct. 2019).

1  he "can testify to this and has evidence of this."[77]  This is insufficient to plead the element of

2  malice with any specificity.  So I dismiss this claim with leave to amend.

3  **III.     Blandino is granted leave to amend his complaint consistent with this order.**

4          Though this order results in the dismissal of all of Blandino's claims, I grant him leave to

5  amend his First Amendment claims and his malicious-prosecution claim with respect to his TPO

6  arguments only.  And because I grant Blandino leave to amend, I deny as moot Federico's

7  motion for a more definite statement.  But I advise Blandino to include only facts that he believes

8  are relevant to his claims against Federico.  He may not include claims or facts against persons

9  not named as a defendant in this case, and he may not include "reserved" claims—any and all

10 claims against Federico must be included in his amended complaint.  If Blandino chooses to file

11 an amended complaint, he is cautioned that an amended complaint replaces the original

12 complaint, so the amended complaint must be complete in itself.[78]  Blandino's amended

13 complaint must therefore contain all claims, defendants, and factual allegations that he wishes to

14 pursue in this lawsuit, but it may contain only his claims for malicious prosecution and First

15 Amendment violations related to Federico's attempts to secure a TPO against him, and no more.

16                                             **Conclusion**

17         IT IS THEREFORE ORDERED that Federico's motion to quash service **[ECF No. 14] is**

18 **DENIED.**

19         IT IS FURTHER ORDERED that Federico's motion to dismiss **[ECF No. 13] is**

20 **GRANTED in part**.  Blandino's abuse-of-process claim concerning his extortion conviction,

21

22 [77] ECF No. 7 at ¶ 72.

23 [78] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original").

and any other claim challenging his extortion conviction, are **DISMISSED without leave to amend**. Blandino's First Amendment and malicious-prosecution claims concerning the temporary protective order sought against him are **DISMISSED with leave to amend consistent with this order.**

**Blandino must file an amended complaint by Monday, November 21, 2022**. If Blandino does not file an amended complaint by this deadline, this case will be dismissed and closed without further prior notice.

IT IS FURTHER ORDERED that Federico's motion for a more definite statement **[ECF No. 15] is DENIED as moot**.

_____
U.S. District Judge Jennifer A. Dorsey
October 31, 2022